FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**JAN 2 6 2018**

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **PARKS IP LAW LLC,** | * | **Civil Action File No: 1:17-CV-4365-TWT** |
| **Plaintiff,** | * | |
| **vs** | * | |
| **THEODORE A. WOOD** | * | |
| **WOOD IP LLC** | * | |
| **Defendants.** | * | |

---

## DEFENDANTS'
## MOTION TO DISMISS
## AND
## TO COMPEL ARBITRATION

---

Defendants Theodore A. Wood and Wood IP LLC, by and through Counsel, respectfully move this Court to dismiss Plaintiff's Complaint against them and to compel arbitration, as the matter is subject to binding arbitration pursuant to an agreement between the parties. The accompanying Memorandum more specifically addresses the grounds for this motion.

WOOD IP LLC

_____ D.C. Bar No. 463804

Theodore A. Wood
Wood IP LLC
555 Quince Orchard Road
Suite 280
Gaithersburg, MD 20878

## MEMORANDUM

Defendant Theodore A. Wood was formerly employed with Parks Wood, LLC. Parks Wood wanted to refine their strategic focus and practice of the law. On March 25, 2016, the parties entered into a formal Separation Agreement. On April 1, 2016, Theodore A. Wood tendered his resignation from Parks Wood, LLC to pursue professional ventures apart from the firm.

The formal Separation Agreement included a promissory note which is the subject of this litigation. (See Exhibits A, Separation Agreement and B, Promissory Note). The Separation Agreement outlined, among other things, the allocation of the law firm's assets, the respective liabilities of the parties and their contractual responsibilities.

The sum represented in the promissory note at issue in this Complaint is alleged to represent Mr. Wood's share of the Parks Wood, LLC debt ($129,083.33). (See Exhibits A and B). Parks Wood, LLC is now Parks IP Law LLC, the Plaintiff in this matter. This matter is subject to binding arbitration, as the Separation Agreement unambiguously states:

> Any and all issues, disputes claims or controversies arising out of or relating to this Agreement and the employment relationship with the Firm, or the validity, enforceability, interpretation, performance, breach or termination of this Agreement, shall be resolved exclusively doing arbitration in Atlanta, Georgia, in accordance with the rules of the American Arbitration Association, and judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Separation Agreement (Exhibit A, Sect. XL).

The validity of an arbitration agreement is generally governed by the FAA, and such agreements have the same force and effect as other contracts under Georgia state law. *Caley v. Gulfstream Aerospace Corp. (Caley II)*, 428 F.3d 1359, 1367-68 (11th Cir. 2005); see 9 U.S.C. § 2 (arbitration agreements are valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of the contract").

The Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), advances the strong federal policy supporting arbitration agreements. Congress enacted it "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *Ultracashmere House, Ltd. v. Meyer, 664 F.2d 1176,* 1179 (11th Cir. 1981), abrogated on other grounds by, *Southland Corp. v. Keating*, 465 U.S. 1, 15 n.9 (1984). In enacting the FAA, Congress sought "to reverse the longstanding judicial hostility to arbitration agreements... and to place [these] agreements on the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); see also *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987) (federal courts should "rigorously enforce agreements to arbitrate").

The Eleventh Circuit enforces this policy, noting that "the Supreme Court has commanded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309*, 1315 (11th Cir. 2002); see also *Picard v. Credit Solutions, Inc., 564 F.3d 1249*, 1253 (11th Cir. 2009); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc. *, 312 F.3d 1349, 1357 (11th Cir. 2002).

When determining whether to compel arbitration, "a court must analyze whether (1) there is a valid written agreement to arbitrate; (2) the issue is... arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims." *Caley v. Gulfstream Aerospace Corp. (Caley I),* 333 F.Supp.2d 1367, 1373 (N.D.Ga. 2004) (citing *Lomax v. Woodmen of the World Life Ins. Soc'y*, 228 F.Supp.2d 1360, 1362 (N.D.Ga. 2002)).

In the case at bar, a valid written agreement to arbitrate exists. (See Exhibit A, Sect. XL). The parties to the agreement are both lawyers. Thus, it may be presumed that they understood the language of the agreement compelling arbitration. The enforcement of the promissory note is arbitrable under the clear terms of the Separation Agreement. Mr. Wood has not refused to arbitrate the claims. In fact, he is pursuing arbitration as the means for resolution of the matter.

An arbitration clause does not need to be detailed to be enforceable. See, e.g., *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (holding that a brief arbitration clause was not too vague and was enforceable, even when it stated only that "any dispute between [the parties] or claim by either against the other" is subject to arbitration). The failure to designate an arbitration company or a particular forum also is not fatal to an arbitration provision. When the parties to an arbitration agreement are unable to agree on an arbitrator, a location for the arbitration, or the arbitration company, the court may step in and resolve these issues. See, e.g., *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 716 (7th Cir. 1987). Nevertheless, the matter is subject to arbitration under the terms of the agreement.

In view of the foregoing law and argument, Defendants respectfully request this Court to Dismiss Plaintiff's Complaint and to Compel Binding Arbitration in Atlanta, Georgia, in accordance with the terms of the parties' Separation Agreement attached hereto.

_____ D.C. Bar No. 463804
Theodore A. Wood
Wood IP LLC
555 Quince Orchard Road, Suite 280
Gaithersburg, MD 20878

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and accurate copy of the foregoing Motion to Dismiss and To Compel Arbitration was served upon Plaintiff Parks IP Law LLC, 75 Ponce de Leon Avenue NE, Atlanta, GA 30308, on this 26th Day of January 2018, by regular U.S. mail, postage prepaid.

_____ D.C. Bar No. 463804
Theodore A. Wood

# EXHIBIT A

# SEPARATION AGREEMENT AND RELEASE

THIS SEPARATION AGREEMENT AND RELEASE ("Agreement") is made, entered into and effective as of the "Separation Date" as that term is defined in Section I of this Agreement, between Parks Wood LLC (the "Firm"), formerly Parks IP Law LLC with its principal office at 730 Peachtree Street NE, Suite 600, Atlanta GA 30308, and Theodore A. Wood ("Wood"), residing at 8107 Black Gold Way, Boyds, MD 20841.

As used herein, the term "Firm" includes Parks IP Law LLC, formerly Parks Wood LLC and formerly Parks Knowlton LLC, by and through its Founding Member Cynthia R. Parks ("Parks"), together with any successors, heirs and assigns. As used herein, the term "Wood" includes Wood IP LLC, with its principal office at 555 Quince Orchard Rd, Suite 280, Gaithersburg, MD 20878, by and through its Founding Member Theodore A. Wood, together with any successors, heirs and assigns.

WHEREAS, the Firm and Wood (the "Parties") have a mutual desire to separate to enable Wood to pursue certain valuable professional ventures outside of and separate from the Firm, and to enable Wood and the Firm to refine the strategic focus of their respective practices;

WHEREAS, in and by a letter dated March 25, 2016, Wood provided the Firm with written notice of his resignation from the Firm, effective April 1, 2016;

WHEREAS, the Firm waives any right to or expectation of additional prior written notice of Wood's resignation; and

WHEREAS, Wood has formed Wood IP LLC, to which the Firm has no objection;

WHEREAS, Wood wishes to be released from all real or apparent personal liability for the Firm's contractual obligations and debts, except as specified in this Agreement, and from any and all present and future claims, except as to performance under this Agreement;

WHEREAS, Parks wishes to be released from any and all present and future claims, except as to performance under this Agreement;

WHEREAS, the Parties now desire to divide, assign, or allocate, between the Firm and Wood IP LLC, certain assets, liabilities and obligations of the Firm.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein, and for other and additional consideration, the receipt and legal sufficiency of which are hereby acknowledged by the parties hereto, Wood and the Firm agree as follows:

## Separation Date:

I.    Wood's relationship with the Firm shall end as of 6:00 p.m. EST on April 1, 2016. At that time, Wood shall be relieved of all responsibilities, duties, and liabilities employment by the Firm.

II.   Wood acknowledges and agrees that he has resigned from the Firm voluntarily and of his own free will.

TAW
CRP

**Compensation:**

III.    Wood hereby affirms and agrees that he has been fully compensated by the Firm, having received all compensation that he earned for 2012, 2013, 2014, 2015, and 2016 through the Separation Date, for all services rendered to the Firm, its Member, and to its clients.

IV.    No additional compensation or other obligation shall be owing to Wood nor shall any accrue after the Separation Date. Wood shall not be entitled to receive any future salary, draw, or incentive payments.

V.    *Reimbursements*: The Firm shall reimburse Wood for all expenses directly related to performance of Firm business and for which Wood has paid with his personal funds prior to the Separation Date. The Firm's obligation to reimburse Wood for any such expense is subject to and conditional upon Wood providing the Firm with documentary evidence and an explanation of such expense sufficient to enable the Firm to verify to its own satisfaction that such expense was directly related to the performance of Firm business. Wood shall reimburse the Firm for all personal expenditures or other expenditures to establish Wood IP LLC that have been made using Firm funds. Wood agrees to cease use of and to surrender all Firm funds and charge cards as of the Separation Date.

VI.    *Equity*: Wood affirms and agrees that he has never had any equity in or draws due from the Firm, never having owned a present or future interest in the Firm.

VII.    Wood has no claim to nor continuing interest in the accounts receivable or work-in-progress of the Firm as of the Separation Date

VIII.    There has been no exchange of any goodwill values from the Firm to Wood.

IX.    The firm owns any loyalty program benefits, including American Express Membership Rewards points or cash back allowances that accrued by virtue of charges made using the Firm credit or charge cards.

**Benefits:**

X.    Through April 1, 2016, the Firm shall continue to provide benefits to Wood, including, without limitation, life insurance and 401(k) matching in accordance with Wood's current 401(k) plan contribution instructions. Wood's 401(k) and IRA accounts opened for, owned by, and maintained for the benefit of Wood remain the sole property of Wood.

XI.    The Firm shall as of the Separation Date no longer pay on behalf of Wood any expenses, including but not limited to:

    a.  Cell phone charges;

    b.  Long distance charges;

    c.  Bar dues;

    d.  Professional memberships;



TAW

CRP

    e.  Subscriptions and treatises, including docket or document management software packages and legal research expenses; and

    f.  Professional liability insurance and the cost of any claims or losses for work performed by Wood for non-Firm clients, including pro bono matters.

Wood agrees to take any and all steps necessary, including providing notice to third parties, to ensure that such charges cease on or before the Separation Date.

**Physical Property**:

XII.  The Firm owns all physical property procured by the Firm or using Firm resources, except the Parties agree that as of the Separation Date, the Firm shall convey or otherwise disclaim rights to and liability for certain assets, as follows:

    a.  Wood shall have possession and ownership of computers and peripherals purchased by Firm for Wood, together with software, but Wood shall transfer subscriptions and assume obligations for future charges for software or tools such as postage meters and office machine service or supplies;

    b.  Wood shall have possession and ownership of Wood's cell phone and applications installed thereon, but Wood shall transfer subscriptions and assume obligations for future charges;

    c.  Wood shall have possession and ownership of Wood's personal files, personal effects, and personal reference material as typically stored in Wood's office; an

    d.  Other equipment, and all furniture, purchased for the Gaithersburg Office shall be the property of Wood or Wood IP LLC, and

Wood hereby agrees to purchase all such assets at their purchase price, which is included in the proportion of the Firm Debt allocated to Wood according to Section XIX of this Agreement. An accounting of the assets is given in **Schedule 1**.

The Firm hereby agrees to ship two additional used office furniture setups from the Atlanta office to Wood IP, at no cost to Wood IP.

**Future Services and Affiliations**:

XIII.  While, neither Party warrants, or could warrant, retention or continued retention by any present, past or future client of Parks IP Law LLC or Wood IP LLC:

    (a)  Parks will not contest and shall provide reasonable assistance to encourage the following clients and client divisions to move to Wood IP LLC patent prosecution matters that have been or will be entrusted to the Firm on or before the Separation Date:

        1.  GE Healthcare – all matters

        2.  GE Lighting – all matters

        3.  GE Transportation – all matters

        4.  GE Power Conversion – all matters

        5.  GE Aviation – all matters

_____ TAW
_____ CRP

6. GE Oil & Gas – all matters

7. MGT Gaming – all matters

8. Prudential –patent matters

9. Heptra Control Systems – all matters

10. USCL – all matters

(b) Wood will not contest and shall provide reasonable assistance to encourage the following clients and client divisions to leave with the Firm their matters that have been or will be entrusted to the Firm on or before the Separation Date:

1. GE Digital Energy (Grid Solutions) – all matters

2. GE Energy Management (Energy Connections) – all matters

3. GE Industrial Solutions – opinion matters

4. GE Hitachi Nuclear – all matters

5. Prudential – trademark/copyright/licensing matters

6. General Motors – all matters

XIV. *General Electric*. The Parties also agree that neither Party seeks to control or restrain GE's access to the other nor to control or restrain the other Party's access to GE or any other current or future client or prospect.

XV. *No Non-Compete*:

a. Parks does not represent and shall not be bound, individually or on behalf of the Firm, to refrain from seeking nor accepting matters of any type or nature from any present, past or future Firm client or prospect.

b. Wood does not represent and shall not be bound, individually or on behalf of Wood IP LLC, to refrain from seeking nor accepting matters of any type or nature from any present, past or future Firm client or prospect.

**Client-Related Materials and Billing**:

XVI. Wood shall within one week of the Separation Date, send to the Firm, and not retain any copies of, any materials, electronic or otherwise, in Wood's possession, under Wood's control, or located at the Gaithersburg Office (as defined below), for matters belonging to clients that have not instructed the Firm, in writing, to transfer said matters from the Firm to Wood.

XVII. Parks shall within 30 days of the Separation Date, send to the Firm, and not retain any copies of, any materials, electronic or otherwise, in its possession, under its control, or located at the Atlanta Office, for matters that clients that have instructed the Firm, in writing, to transfer from the Firm to Wood.

XVIII. As soon as practicable, and in any event, on or before April 1, 2016, Wood shall enter into the Firm's computer billing system all of Wood's billable time, including the time of all Wood employees and contractors, all time and disbursements associated with matters retained by the Firm, and all time and disbursements

TAW
CRP

associated with matters retained by or transferred to Wood, that was incurred through the Separation Date, regardless of whether the work on said matters is complete or ready to bill. The Parties agree to work together in good faith to determine how to allocate proceeds from each fixed fee or limited budget matter that is transferred to Wood, and for which hours were logged both before and after the Separation Date.

**Debts of the Firm**:

XIX.   In recognition of the mutually recognized benefits realized by Wood between 2012 and the Separation Date, including but not limited to advertising, promotion of Theodore Wood and his Grid Practice and expertise, together with client, professional, and personal development, and thereby also inuring to their benefit, Wood and Wood IP LLC agree, jointly and severally, to be hereby liable for and to pay to the Firm one third of the Firm Debt that existed as of March 7, 2016. An accounting of the Firm Debt, along with a payment schedule, is attached as **Schedule 2**. Wood agrees to execute the Promissory Note attached hereto as **Schedule 3**.

**Release of Wood from Liability**:

XX.    The Firm agrees to facilitate removal of any personal guarantees made by Wood to secure the portion of the Firm Debt that has not been allocated to Wood and other liabilities, except as agreed herein. Where removal is not possible or where no personal guarantee has been made by Wood, the Firm agrees to indemnify and hold harmless Wood from and against all costs, liabilities, and expenses associated with unallocated Firm Debt, and from other liabilities arising after the Separation Date, including liabilities or expenses associated with leasehold obligations existing before the Separation Date except for the Gaithersburg Office.

XXI.   The Firm shall retain the liability of the Firm's leasehold interest for the remainder of the term of the current lease by the Firm of the Atlanta Office.

XXII.  The Firm will, as soon as possible after execution of this Agreement, remove Wood from any accounts of the Firm on which he may be listed, including but not limited to checking, savings, trust, and credit card accounts. Wood agrees to execute any document or take any other step necessary to facilitate this removal.

XXIII. As and for consideration for the covenants, promises and agreements contained in this Agreement and the benefits and other consideration received by the Firm pursuant to this Agreement, and as a material inducement to Wood to give same to the Firm, the Firm, for itself and its administrators, executives and assigns or for any other individual or entity who may claim by or through it, has irrevocably and unconditionally released, remised and forever discharged, and does hereby irrevocably and unconditionally release, remise and forever discharge, Wood and his successors, assigns, joint venture partners, assignees, grantees, fiduciaries, agents, directors, representatives and attorneys, and the heirs, executors and administrators of such of the foregoing as are natural persons, and all persons acting by, through, under or in concert with any of the foregoing (hereinafter, "Wood's

TAW

_____ CRP

Releasees"), from any and all claims, charges, complaints, liabilities, obligations, promises, agreements, contracts, doings, omissions, controversies, actions, rights, costs, debts, sums of money, reckonings, covenants, demands, causes of action, suits at law or equity, damages, punitive damages, verdicts, losses, executions, expenses, attorneys' fees, costs and judgments of every kind and nature whatsoever against any of Wood's Releasees, which the Firm now has, may have or claim to have, or which the Firm at any time heretofore had, may have had or claimed to have had, from the beginning of the world through the Separation Date, whether known or unknown, anticipated or unanticipated, asserted or unasserted, fixed or contingent, foreseeable or unforeseeable, accrued or unaccrued (hereinafter, collectively, "Claims"), for, upon, by reason of, resulting from, arising from, concerning or relating to, or in any manner connected with, any matter, event, act, omission or situation, including, without limitation, Wood's employment relationship with the Firm, the cessation of Wood's employment relationship with the Firm.

XXIV. *Actions Against the Firm by Wood Contractors*

Wood shall have no liability for actions against Firm, except that should any employment-related or breach of contract action be brought against the Firm or against Cynthia Parks by any of the following individuals, then Wood shall bear 50% of the associated loss, judgment or expense associated with defending or settling said action:

- Sheila Jallow;
- Sarika Gupta;
- Dinnatia Doster Greene;
- Deidre McAuley;
- Carolyn Moore.

XXV. This Agreement shall not in any way be construed as an admission by any of Wood's Releasees of any acts, conduct or omission constituting wrongdoing against the Firm or any other person, or of fault or liability of any of Wood's Releasees arising from or in any manner connected with, Wood's employment relationship with the Firm, the cessation of Wood's employment relationship with the Firm, and Wood specifically disclaims and denies any liability to or wrongdoing against the Firm or any other person, on the part of all Wood's Releasees.

XXVI. The Firm, for, together, with and on behalf of itself and its agents, representatives, attorneys, successors and assigns, also agrees and covenants not to file a lawsuit, arbitration, administrative complaint or legal claim against Wood or any of Wood's Releasees. Any lawsuit, administrative claim, arbitration or other legal claim filed in violation of this Agreement by the Firm, for, together, with or on behalf of itself or its agents, representatives, attorneys, successors or assigns, shall constitute a breach of this Agreement.

XXVII. The Firm agrees not to contest the validity of this Agreement.

TAW

CRP

**Release of Firm from Liability:**

XXVIII. Wood, either personally, by and through Wood IP LLC, or by and through another entity, shall take the liability of the Firm's leasehold interest for the remainder of the term of the current lease by the Firm of at 555 Quince Orchard Rd, Suite 280, Gaithersburg MD, 20878 (the "Gaithersburg Office"), in one of the following ways, attempting them in order of preference, starting with the first (option (a)), then the second (b), and then the third (c):

    (a) taking assignment or transfer of the lease, commencing on the Settlement Date, with lessor's approval, subletting to replace the current lease, if the Lessor will not allow the first option (a), but will allow assignment of the lease from the Firm to Wood or Wood IP LLC to replace the current lease, commencing on the Settlement Date, and

    (b) making a new lease with the lessor, to replace the current lease, commencing on the Settlement Date, with lessor's approval;

    (c) sub-letting the Gaithersburg Office, commencing on the Settlement Date, if the Lessor will not allow the first two options (a), (b), but will allow the Firm to sublet the Gaithersburg Office to Wood or Wood IP LLC.

Should it be necessary to resort to the third option, Wood agrees to make diligent effort and take any and all reasonable steps necessary to transition to the first or second option as soon as possible.

XXIX. As and for consideration for the covenants, promises and agreements contained in this Agreement and the benefits and other consideration received by Wood pursuant to this Agreement, and as a material inducement to the Firm to give same to Wood, Wood, for himself and his heirs, administrators, executives and assigns or for any other individual or entity who may claim by or through him, has irrevocably and unconditionally released, remised and forever discharged, and does hereby irrevocably and unconditionally release, remise and forever discharge, the Firm, all present and future employees of the Firm, and all of their respective predecessors, successors, assigns, joint venture partners, assignees, grantees, fiduciaries, agents, directors, representatives and attorneys, and the heirs, executors and administrators of such of the foregoing as are natural persons, and all persons acting by, through, under or in concert with any of the foregoing (hereinafter, "Firm's Releasees"), from any and all claims, charges, complaints, liabilities, obligations, promises, agreements, contracts, doings, omissions, controversies, actions, rights, costs, debts, sums of money, reckonings, covenants, demands, causes of action, suits at law or equity, damages, punitive damages, verdicts, losses, executions, expenses, attorneys' fees, costs and judgments of every kind and nature whatsoever against any of the Firm's Releasees, which Wood now has, may have or claim to have, or which Wood at any time heretofore had, may have had or claimed to have had, from the beginning of the world through the Separation Date, whether known or unknown, anticipated or unanticipated, asserted or unasserted, fixed or

_____ TAW
_____ CRP

contingent, foreseeable or unforeseeable, accrued or unaccrued (hereinafter, collectively, "Claims"), for, upon, by reason of, resulting from, arising from, concerning or relating to, discrimination based on any basis, including, without limitation, sex, race, color, religion, religious creed, age, national origin, citizenship, ancestry, handicap, physical or mental disability or disorder, mental retardation, learning disability, medical condition, marital status, veteran's status, carrier status or sexual orientation, arising under any federal, state or statutes, regulations, ordinances or laws, including, without limitation, common law, Title VII of the Civil Rights Act of 1964, as amended, the Americans With Disabilities Act, the Civil Rights Act of 1991, the Civil Rights Act of 1866, as amended, the Family and Medical Leave Act, the Equal Pay Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, as amended, the Age Discrimination in Employment Act (hereinafter, "ADEA"), as amended, the Older Workers Benefit Protection Act of 1990 (hereinafter, "OWBPA"), the Rehabilitation Act of 1973, the Immigration Reform and Control Act of 1986, the Worker Adjustment and Retraining Notification Act, the Veteran's Reemployment Rights Act, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Vietnam-Era Veterans' Readjustment Assistance Act, the Consolidated Omnibus Budget Reconciliation Act, the Georgia Security & Immigration Compliance Act, the Georgia Equal Employment for People with Disabilities Code, the Employment Security Law of Georgia, and/or the Georgia Labor and Industrial Relations Code, or any equivalent in Maryland, the District of Columbia, or any other state or territory relevant to this Agreement, for, upon, by reason of, resulting from, arising from, concerning, relating to or in any manner connected with, any matter, event, act, omission or situation, including, without limitation, Wood's relationship with the Firm including the cessation of Wood's employment relationship with the Firm and this Separation Agreement.

XXX. Wood represents and warrants to Firm's Releasees that he understands and agrees that this Agreement shall act as a full and final release of any claims of every nature and kind whatsoever that have arisen or could have arisen between Wood on the one hand, and Firm's Releasees on the other hand, prior to the Separation Date, whether such claims are currently known or unknown, anticipated or unanticipated, asserted or unasserted, fixed or contingent, foreseeable or unforeseeable, accrued or unaccrued.

XXXI. Wood agrees not to contest the validity of this Agreement.

XXXII. To comply with the OWBPA, and for all other purposes, the Firm, in this Agreement, has advised, and hereby advises, Wood, of the legal requirements of the OWBPA and fully incorporates the legal requirements of the OWBPA into this Agreement, as follows:

  a. Wood acknowledges and agrees that this Agreement is written in layman's terms and Wood understands and comprehends its terms.

  b. In this Agreement, the Firm hereby advises Wood to consult with an attorney of his choice to review this Agreement prior to entering into and

Page 8 of 15



TAW
CRP

executing this Agreement, and Wood hereby acknowledges that he has the right to do so, and has had the opportunity to do so.

c.  The Firm acknowledges and agrees that, by entering into and executing this Agreement, Wood is not waiving any claims that may arise after the date that he enters into and executes this Agreement, nor is Wood waiving any claim that his waiver of claims for age discrimination under the ADEA set forth in this Agreement is invalid.

d.  Wood acknowledges and agrees that the Firm has advised him in this Agreement that he may consider this Agreement for a period up to twenty-one (21) days before entering into and executing it, and that he should consult with an attorney before entering into and executing it.

e.  Wood agrees and acknowledges that, pursuant to this Agreement, he is receiving consideration beyond anything of value to which he is already entitled under the Operating Agreement, any other express or implied agreements and/or applicable law.

f.  The Firm hereby advises Wood, and Wood hereby agrees and acknowledges, that the Firm has advised Wood that he may revoke this Agreement, in writing, delivered to Cynthia Parks, within seven (7) days after executing this Agreement, and that this Agreement shall not become effective until the expiration of said seven (7) day period after Wood executes this Agreement.

XXXIII.  Wood, for, together, with and on behalf of himself and his heirs, beneficiaries, executors, administrators, agents, representatives, attorneys, successors and assigns, also agrees and covenants not to file a lawsuit, arbitration, administrative complaint or legal claim against the Firm, or any other Firm Releasee, asserting, alleging or in the nature of discrimination claims, or to otherwise assert or allege any discrimination claims. Any lawsuit, administrative claim, arbitration or other legal claim filed in violation of this Agreement by Wood, for, together, with or on behalf of himself or his heirs, beneficiaries, executors, administrators, agents, representatives, attorneys, successors or assigns, shall constitute a breach of this Agreement.

**Representations and Acknowledgements**:

XXXIV.  Wood represents and warrants to the Firm that he has the full power, capacity, and authority to enter into this Agreement, and that no portion of any claim, right, demand, action, or cause of action that Wood has or might have had arising out of the acts, events, transactions, and occurrences referred to herein have been assigned, transferred, or conveyed to any person not a party to this Agreement, by way of subrogation, operation of law, or otherwise, and that no releases or settlement agreements are necessary or need to be obtained from any other person or entity to release and discharge completely any of Wood's claims released in this Agreement.

Page 9 of 15

TAW

CRP

XXXV.    Wood represents and warrants to the Firm that he understands that if the facts upon which this Agreement are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the parties accept and assume the risk of such possible differences, agreeing that this Agreement shall remain binding and effective, notwithstanding such potential differences.

XXXVI.    Wood acknowledges that he has entered into this Agreement freely, knowingly, and voluntarily. Wood further acknowledges that he understands the legal effect of this Agreement, and that he has had the opportunity to consult his attorney regarding the legal effect of this Agreement.

XXXVII.    It is understood and agreed that this Agreement was reached and agreed to by the parties in order to avoid the expense and uncertainties of potential litigation.

XXXVIII.    Except in connection with any lawsuit, arbitration or other proceeding arising from or relating to Wood 's employment or other claims asserted by either of the parties against the other: (a) Wood will not denigrate, disparage, criticize, defame or make any false or derogatory statements concerning the Firm, or any Members or employees of the Firm, and (b) the Firm will not denigrate, disparage, criticize, defame or make any false or derogatory statements concerning Wood.

XXXIX.    This Agreement shall become effective on the eighth (8th) day after Wood executes this Agreement, provided that, Wood has not revoked this Agreement in writing within seven (7) days after executing this Agreement in accordance with Section XXXII(f) of this Agreement or in any other manner. Wood's non-revocation of this Agreement in writing within seven days after executing this Agreement in accordance with Section XXXII(f) of this Agreement or in any other manner is a condition precedent to this Agreement becoming effective.

XL.    Any and all issues, disputes, claims or controversies arising out or relating to this Agreement or the employment relationship with the Firm, or the validity, enforceability, interpretation, performance, breach or termination of this Agreement, shall be resolved exclusively by binding arbitration in Atlanta, Georgia, in accordance with the rules of the American Arbitration Association, and judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

_____ TAW
_____ CRP

XLI.     Any notice required or permitted by this Agreement shall be given in writing, either personally or by mail, to the following addresses:

> *If to the Firm*:
>
> Cynthia R. Parks
> Managing Member, Parks IP Law LLC
> 730 Peachtree Street NE, Suite 600
> Atlanta GA 30308
>
> *If to Wood*:
>
> Theodore A. Wood
> Managing Member, Wood IP LLC
> 555 Quince Orchard Rd, Suite 280
> Gaithersburg MD 20878

and such notice shall be deemed received three (3) days after mailing if properly posted, or upon receipt if personally delivered.

XLII.    *General Provisions*:

a.  This Agreement shall inure to the benefit of and be binding upon Wood and any of his heirs, administrators, executives and assigns or any other individual or entity who may claim by or through him. Wood's rights and obligations under this Agreement shall not be assigned, pledged, or encumbered by him without the Firm's written consent.

b.  No modification, amendment or waiver of any provision of this Agreement shall be effective unless approved in writing by both parties. The failure of either party at any time to enforce any of the provisions of this Agreement shall not be construed as a waiver of such provisions and shall not affect the right of such party thereafter to enforce each and every provision hereof in accordance with its terms.

c.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. But if any provision of this Agreement shall be held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

d.  This Agreement is complete and sets forth the entire understanding of the parties regarding the subject matter thereof. All existing agreements, contracts, or understandings between the parties, whether oral or written, relating to the subject matter of this Agreement are hereby superseded and rendered invalid by this Agreement.

_____ TAW
_____ CRP

e. All questions concerning the construction, interpretation and enforcement of this Agreement shall be governed by the internal laws of the State of Georgia without regard to its conflicts of laws principles.

f. The "WHEREAS" recitals are an integral part of this Agreement.

g. This Agreement may be executed in counterparts, each of which together constitute one and the same instrument. IN WITNESS WHEREOF, the parties have hereunto voluntarily executed this Agreement on the dates indicated below.

**Theodore A. Wood, Esq.**
Individually, and as Managing Member of Wood IP LLC

Dated: March 25, 2016

**STATE OF MARYLAND**

**COUNTY OF** _Montgomery_

Before me personally came Theodore A. Wood, Esq., known to me or proved to me on the basis of satisfactory evidence to be the individual described in, and who executed the foregoing Separation Agreement and Release, and who, by me duly sworn, did depose and say that deponent resides at _8167 Black Gold Way   Boyds MD 20841_, and who duly acknowledged to me that he executed the foregoing Separation Agreement and Release in his individual capacity as his free, knowing and voluntary act, and that by his signature on the foregoing Separation Agreement and Release, executed the same.

Sworn to before me this _26_ day of March, 2016.

Notary Public

SHEENA NICELY
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES 2/25/20

**PARKS IP LAW LLC**

By: _____
**Cynthia R. Parks, Esq.**
Managing Member

Dated: March __, 2016

**STATE OF GEORGIA**

**COUNTY OF** _____

Before me personally came Cynthia R. Parks, Esq., known to me or proved to me on the basis of satisfactory evidence to be the individual described in, and who executed the foregoing Separation Agreement and Release, and who, by me duly sworn, did depose and say that deponent resides at 730 Peachtree St. NE, Suite 600, Atlanta, GA 30308 that deponent is the Managing Member of Parks IP Law, the entity described in, and which executed, the foregoing Separation Agreement and Release, and that deponent is authorized to execute the foregoing Separation Agreement and Release.

Sworn to before me this ___ day of March, 2016

_____
Notary Public

Page 12 of 15

_____ TAW

_____ CRP

**Schedule 1**

MARYLAND OFFICE ASSETS

TAW
CRP

**Schedule 2**

# ACCOUNTING

As detailed below, the Firm Debt totals $387,808.17, which comprises credit line draws (Credits) made since January 2014. Of this total, $149,279.77 remains on the line of credit, and $238,528.40 has been transferred to a term loan.

**Parks Wood LLC**
**General Ledger**
**January 1/14 to March 9/16**

| Acct. No. Date | Srce | Account Name Ref | Entry # | Paid To | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|
| **2500** | | **Loan Payable** | | | | | | 0.00 |
| Feb 5/14 | GB | 02003 | 204450 | Bank of North Georgia | Line of Credit Advance | | 40,000.00 | |
| Mar 6/14 | GB | 02024 | 207991 | Bank of North Georgia | Line of Credit Advance | | 50,000.00 | |
| Aug 25/14 | GB | 02236 | 228105 | Bank of North Georgia | Line of Credit Advance | | 80,000.00 | |
| Sep 29/14 | GB | 02273 | 231438 | Bank of North Georgia | Line of Credit Advance | | 100,000.00 | |
| Nov 13/14 | GB | 02330 | 237702 | Bank of North Georgia | Line of Credit advance | | 50,000.00 | |
| Feb 4/15 | GB | 02424 | 245931 | Bank of North Georgia | Line of Credit Advance | | 40,000.00 | |
| Apr 1/15 | GB | 02488 | 252306 | Bank of North Georgia | Line of Credit Advance | | 36,000.00 | |
| Jul 10/15 | GB | eft | 264985 | Bank of North Georgia | Line of Credit - Principal Payment | 10,000.00 | | |
| Aug 11/15 | GJ | J0546 | 269555 | Journal Entry | Recode amt transferred to term loan | 250,000.00 | | |
| Mar 2/16 | GB | 02876 | 290216 | Bank of North Georgia | Line of Credit Advance | | 14,000.00 | |
| Mar 3/16 | GB | eft | 290266 | Bank of North Georgia | Line of Credit interest payment | 720.23 | | |
| | | | | | **Closing balance - Loan Payable** | | | **(149,279.77)** |
| **2510** | | **Term Loan** | | | | | | 0.00 |
| Aug 11/15 | GJ | J0546 | 269555 | Journal Entry | Recode amt transferred to term loan | | 238,528.40 | |
| | | | | | **Closing balance - Term Loan** | | | **(238,528.40)** |

# PAYMENT SCHEDULE

As detailed in the Promissory Note (**Schedule 3**), Wood shall pay to the Firm one third (33 and 1/3%) of the foregoing Firm Debt ($129,085.33), over a term of 24 months, at twelve percent (12%) per annum.

TAW
CRP

**Schedule 3**

PROMISSORY NOTE



_____ TAW
_____ CRP

# EXHIBIT B

# TERM PROMISSORY NOTE

$129,269.33

March 25, 2016
Atlanta, Georgia

FOR VALUE RECEIVED, the undersigned THEODORE A. WOOD, jointly and severally with WOOD IP LLC (hereinafter referred to as "Maker"), promises to pay to the order of PARKS IP LAW LLC (hereinafter referred to as "Payee") at such place as the Payee may designate, the principal sum of One Hundred Twenty-Nine Thousand, Two Hundred Sixty Nine and 33/100 Dollars ($129,269.33), together with interest accruing from the Commencement Date on so much of the principal balance of this Note as may be outstanding and unpaid from time to time, at the rate per annum equal to the Interest Rate (as hereinafter defined).

As used herein the term "Interest Rate" shall mean twelve percent (12%) per annum.

<u>Terms of Payment</u>: Commencing on May 1, 2016 (the "Commencement Date") principal and interest shall be due and payable to Payee as follows:

Twenty-four (24) payments of $6,085.16 (Six Thousand Eighty-Five Dollars and 16/100), towards principal and interest on remaining principal, to be made on the first of each month until fully paid. Principal and interest due under the Promissory Note are payable at the following address: 730 Peachtree St. NE, Suite 600, Atlanta Georgia 30308, or such other place that the Payee my designate.

All payments hereunder received from Maker by Payee shall be applied first to the payment of accrued but unpaid interest, and then to reduction of the outstanding principal balance (in inverse order of maturity whether or not then due), but such application shall not reduce the amount of the fixed monthly installments, if any, required to be paid hereunder. All amounts due under this Note shall be payable without setoff, counterclaim or any other deduction whatsoever.

Each of the following events shall constitute an "<u>Event of Default</u>": (1) failure by Maker to pay when due any monies owed hereunder; or (2) if Maker (a) is voluntarily adjudicated to be bankrupt or insolvent, (b) voluntarily files any petition or commences any case or proceeding under any provision or chapter of Title 11 of the United States Code (the "<u>Federal Bankruptcy Code</u>") or any other foreign, federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization, (c) has a petition filed or any case or proceeding described in (b) above commenced against Maker, unless such petition and the case or proceeding initiated thereby is dismissed within sixty (60) days from the date of the filing, (d) makes a

general assignment for the benefit of his creditors, (e) admits in writing that he is generally not able to pay its debts as they mature, or generally is not paying his debts as they mature, or (g) becomes insolvent, as that term is defined in the Federal Bankruptcy Code. Upon the occurrence of an Event of Default, the unpaid principal balance and all accrued interest shall be immediately due and payable, and may be collected forthwith. In addition, Payee may seek any remedy available under applicable law, and may demand security, additional security, or additional parties to be obligated to pay this Note as a condition to refraining from doing so.

Prepayment Provision: Maker may prepay this Note in whole or in part at any time, from time to time and without penalty or premium. Each such prepayment shall be applied, first, to unpaid interest accrued through the date of such prepayment, and then to installments of principal in their inverse order of maturity without affecting Maker's obligation hereunder to pay any remaining immediately future installments of principal according to the provisions of this Note.

The Promissory Note is made in repayment of a loan made from Payee to Maker, which Maker has agreed to repay in accordance with these terms, and Maker expressly agrees and acknowledges that such debt is owed and that proper consideration for this Note has been given and received.

Waiver: Demand, presentment, notice, notice of demand, notice for payment, protest and notice of dishonor are hereby waived by Maker.

Payee shall not be deemed to waive any of its rights hereunder unless such waiver be in writing and signed by Payee. Any failure on the part of Payee at any time to require the performance by Maker of any of the terms or provisions hereof, even if known, shall in no way affect the right thereafter to enforce the same, nor shall any failure of Payee to insist on strict compliance with the terms and conditions hereof be taken or held to be a waiver of any succeeding breach or of the right of Payee to insist on the strict compliance with the terms and conditions hereof.

Terms: The term "Maker" shall include heirs, legal representatives, successors and assigns of the Maker. The term "Payee" as used herein shall, when the circumstances or the content requires, include legal representatives, successors and assigns of Payee.

Governing Law: This Note shall be governed by, and construed in accordance with, the laws of the State of Georgia.

<u>Jurisdiction and Venue</u>: Any action or proceeding between Maker and Payee must be brought in the State of Georgia, Fulton County, and Maker consents to such jurisdiction and venue.

<u>Attorney's Fees and Expenses</u>: Maker shall pay all costs of collection, including, without limitation reasonable attorney's fees and expenses, if this Note is collected by or through an attorney.

Executed under hand and seal effective as of the date and year first above written.

Makers:

_____
Theodore A. Wood

_____
Wood IP LLC
By:    Theodore A. Wood


COUNTY OF Montgomery

Before me personally came Theodore A. Wood, Esq., known to me or proved to me on the basis of satisfactory evidence to be the individual described in, and who executed the foregoing Separation Agreement and Release, and who, by me duly sworn, did depose and say that deponent resides at 18014 Black Gold Way Boyds MD 20841, and who duly acknowledged to me that he executed the foregoing Separation Agreement and Release in his individual capacity as his free, knowing and voluntary act, and that by his signature on the foregoing Separation Agreement and Release, executed the same.

Sworn to before me this 25 day of March, 2016.

_____
Notary Public

SHEENA NICELY
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES 2/26/20

Page 3 of 3